Filed 11/4/21  P. v. Vidal-Rizo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F078082 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CMS1638) |
| v. | |
| JUAN MANUEL VIDAL-RIZO, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert Shane Burns, Judge.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## STATEMENT OF THE CASE

In May 2016, defendant Juan Manuel Vidal-Rizo was charged, in count 1, with committing a forcible lewd and lascivious act on M.V. (Pen. Code, § 288, subd. (b)(1))[1]; in count 2, with assaulting M.V. with the intent to commit a sex offense (§ 220, subd. (a)(2)); in count 3, with engaging in sexual intercourse with M.V. while she was 10 years of age or younger (§ 288.7, subd. (a)); and in count 4, of committing a lewd and lascivious act against J.V. (§ 288, subd. (a)).  As to all counts, it was alleged that defendant committed sex offenses against more than one victim (§ 667.61, subds. (a), (c), & (e)(4).)[2]

A jury found defendant guilty on counts 1, 2 and 3, but not guilty on count 4.[3] The multiple-victim allegation was found not true.

Following the verdict, defendant filed a motion for new trial, which was denied after an evidentiary hearing.

The trial court sentenced defendant to 25 years to life plus 10 years, four months in prison, with presentence custody credits.

On appeal, defendant contends: (1) trial counsel was ineffective for failing to investigate his family law file or to impeach the witnesses with audio statements or transcripts of their prior statements; (2) the trial court erred when it allowed M.V. to testify to uncharged acts of molestation and trial counsel was ineffective for failing to object to the uncharged acts evidence; (3) CALCRIM No. 1191 was improperly given since there was no substantial evidence of uncharged prior crimes to support the instruction and the instruction reduced the prosecution's burden of proof; (4) there was

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

[2]    A first amended information was filed on June 23, 2017 but is not in the record. The recitation of charges is taken from the verdict forms.

[3]    The minute order incorrectly states that defendant was found guilty on count 4.

insufficient evidence to support his convictions for forcible lewd acts against M.V. in count 1; and (5) his sentences on counts 1 and 2 should be stayed pursuant to section 654. We agree only that defendant's sentence on count 2 must be stayed and, in all other respects, affirm.

## STATEMENT OF THE FACTS

*Defendant's Sexual Abuse of M.V.*

Defendant and J.C. (mother) had three children together, daughters M.V. and J.V. and son E.V. Defendant and mother dated for a few years before separating. Defendant lived in a house in Avenal and had the children every other weekend.

M.V., who was 18 years old at the time of trial in June of 2017, testified that, on one occasion when she was eight or nine years old in the third or fourth grade[4], she was at defendant's house with her siblings watching cartoons in defendant's bedroom. When her siblings left the room, defendant touched M.V.'s vagina over her clothing. He then took off her pants and underwear and put his penis into her vagina and had sexual intercourse with her.

M.V. was scared and told defendant to stop. When he did not, she started crying softly. After defendant finished, he put his clothing back on and left M.V. crying alone in the room.

M.V. testified to another occasion, in which she and defendant were alone in his bedroom and he had the Playboy channel on the television. Defendant grabbed M.V.'s arm and laid her down on the bed. He touched her vagina over her clothing, removed M.V.'s pants and underwear, removed his own pants and underwear, touched M.V.'s vagina with his hand, and put his penis into her vagina and had sexual intercourse with her. M.V. told defendant to stop, but he said nothing. Again, after he finished, he put on his clothes and left M.V. in the bedroom crying.

---

[4] This would be in 2007 or 2008.

M.V. testified that defendant had sex with her approximately 10 times, although she could not remember the details. According to M.V., these acts stopped when she was nine and defendant began going to church and met his new wife, Linda Vidal.[5]

*M.V.'s Disclosure of Abuse in 2013*

In 2013, when M.V.'s sister J.V. wanted to live with defendant instead of mother, M.V. became upset and told mother about defendant's abuse of her. Mother took M.V. to the Avenal Police Department where she was interviewed by Officer Stephanie Storm.

After M.V. reported the abuse to the police, Linda told M.V. that what she had said about defendant was not true and she should drop the charges. M.V. felt bad and told Officer Storm she had made up the allegations.

*J.V.'s Disclosure of Abuse in 2016*

J.V. was 15 years old at the time of trial. She first told anyone about defendant's abuse of her in 2016 when she was in juvenile hall. A nurse was examining J.V. for a medical issue when J.V. stated she was depressed. When questioned why, J.V. said that, when she was five or six years old, defendant had given her pills that made her sleepy. When she awoke, J.V.'s hand was on defendant's penis, with his hand moving her hand, and the Playboy channel was on the television.

J.V.'s allegation was reported to the police. The police then contacted M.V. who reasserted her earlier allegations of abuse made in 2013.

*E.V. Corroborating Testimony*

E.V., 16 years old at the time of trial, brother to J.V. and M.V., testified that, when he and his sisters would visit defendant, there were times when they would all be in defendant's bedroom, and defendant would make E.V. and J.V. leave and then close the door. E.V. could not remember how many times this happened. He could not hear anything happening inside the bedroom. E.V. also recalled seeing a television channel

---

[5] Because Linda's last name is also Vidal, we will refer to her by her first name.

with naked people at defendant's house, but he could not recall if this television was in the living room or bedroom.

*Officers Interview of Defendant*

Police Officer Leopoldo Segura interviewed defendant at his home after reading him his *Miranda*[6] rights in Spanish, which defendant stated he understood. When asked about the allegations M.V. made against him in 2013, defendant denied anything happened. When asked about his relationship with J.V., defendant stated he believed J.V. was upset at him because she was in juvenile hall and he had not visited her.

Officer Segura then asked defendant about the accusations J.V. had made. Defendant became defensive and looked down at the ground in silence for about a minute. Officer Segura asked defendant if his daughters were lying. Defendant responded, saying "I'm not going to call them liars." Officer Segura asked defendant again about the allegations made by M.V. and whether they were true. Defendant remained silent, this time for about two minutes. He started nodding his head up and down, but then said, "nothing happened."

*Defense*

Private investigator Thomas Edmonds testified that he went to defendant's house and examined defendant's bedroom. He testified that, when he was in the bedroom with the door closed, he could clearly hear people in the living room at normal volume.

Defendant's son, Josue, age 20 years old at the time of trial, testified that he lived with defendant during the time M.V. and J.V. came to the house on weekends. According to Josue, there was never a time when defendant stayed in the bedroom with M.V. or J.V. after sending the other children out of the room. He never noticed his father being alone in the bedroom with M.V. or J.V.

---

[6]     *Miranda v. Arizona* (1966) 384 U.S. 436.

Linda testified that she and defendant began dating in 2008 and were married in 2009. According to Linda, defendant had a normal father-daughter relationship with M.V.

Linda testified that J.V. called in 2013 to tell them that mother wanted her to go live with defendant and Linda because she had been expelled from school. Linda and defendant told J.V. she could come live with them, but she would have to go to church and follow the rules. J.V. agreed and came to live with them. This caused tension between the families. The police came out to defendant's house three times. One time they came because mother came to take J.V. back, but J.V. did not want to go. The other two times were to do welfare checks on J.V., as the police had been told J.V. was not being fed and was being mistreated. The police told J.V. her that mother wanted to see her, which J.V. agreed to if she could return to defendant. Later that same day, Officer Storm took defendant in for questioning with regards to the allegations made by M.V.

According to Linda, J.V. contacted Linda and defendant in a December 20, 2013 video call. J.V. put M.V. on the call, and M.V. asked defendant and Linda if they could meet her at a local park. M.V. was upset and told them she just wanted to tell the truth but was afraid. Linda told M.V. not to be afraid and to tell the truth. Linda denied threatening or guilting M.V. into changing her story.

Linda testified that M.V. texted her about wanting to tell the truth about what happened. Linda showed these text messages to Officer Storm. Three or four days after M.V. recanted her allegation, the sisters began visiting defendant again. These visits were always initiated by the sisters and would last for weeks or months. Linda denied ever seeing anything that led her to believe that defendant had an inappropriate relationship with either M.V. or J.V.

# DISCUSSION

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that, due to his trial counsel's failure to investigate his family law court file or to impeach the witnesses with audio statements or transcripts of their prior statements, trial counsel rendered ineffective assistance of counsel. This argument is virtually identical to his claim of ineffective assistance of counsel raised in his new trial motion, which the trial court denied.

A criminal defendant's right to effective assistance of counsel is constitutionally guaranteed. (U.S. Const., 6th Amend.; *Strickland v. Washington* (1984) 466 U.S. 668, 684–685.) To establish a violation of that right, the defendant must show both that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the lapse was prejudicial. (*Id.* at pp. 687–688, 691–692.) Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*In re Avena* (1996) 12 Cal.4th 694, 721.) " 'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof ... must be a demonstrable reality and not a speculative matter.' " (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

Typically, a trial court has broad discretion when ruling on a new trial motion and its ruling will not usually be disturbed on appeal unless it has abused its discretion. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 730.) However, when we review a claim of ineffective assistance of counsel made in support of a motion for new trial, we apply a mixed standard of review. We defer to the trial court's factual findings if supported by substantial evidence, but we exercise de novo review over the ultimate issue of whether the defendant's constitutional rights were violated. (*People v. Taylor* (1984) 162 Cal.App.3d 720, 724–725.)

*Failure to Investigate Family Law Court File*

Defendant contends first that trial counsel was ineffective for failing to adequately investigate and present evidence demonstrating his victims had motive to lie about his alleged abuse. As argued by defendant, trial counsel "fail[ed] to seek discovery or investigate the family law file, to demonstrate the motive and timing of the allegations made by [M.V. and J.V.] in relation to the custody and parenting disputes with the two girls." According to defendant, he initiated family law proceedings regarding mother's inadequate care of his daughters on November 25, 2013, which was just five days before M.V.'s initial report of abuse to law enforcement. At that time, defendant alleged M.V. was pregnant by a gang member and hanging out with gang members. In January 2014, defendant again sought custody of his daughters because J.V. had brought bomb-making materials to school and been battered by mother. Defendant contends that these facts were not before the jury and would have shown motive for M.V. and J.V.'s accusations against him.

At the hearing on the new trial motion, Linda testified that she had informed trial counsel that there was a family law proceeding involving mother and the girls, including an ongoing custody matter and that police were called several times.

The private investigator testified that Linda provided him information concerning some family custody issues between the two families. He vaguely remembered recommending to trial counsel that he follow up on it.

Trial counsel testified that he could not recall if there was a family law file concerning the individuals in this case and he had not reviewed the family law file when trial started.

The trial court, in denying the new trial motion on grounds of ineffective assistance of counsel, stated,

> "Assuming all that is true, there has to be something by not obtaining those records, or not obtaining or conducting that investigation that resulted in a

deficiency to lead you to believe there was a reasonable probability that it would—had it been done would undermine[] the outcome in this case, and I have not been provided with anything specifically that suggests to me that is the case."

Defendant contends the family law file would have shown he filed for custody of J.V. in 2013 because mother was not properly caring for J.V. This occurred just five days before M.V. told mother of the abuse. However, the fact that the initial claim of abuse came amidst conflict over J.V.'s custody arrangement was explored at trial. M.V. testified that she initially disclosed defendant's abuse when J.V. said she wanted to live with defendant and M.V. wanted J.V. to return home to mother. Mother also testified that she was upset that J.V. would not come home from defendant's house, and that M.V. disclosed the abuse to try to convince J.V. to return home. At the time, M.V. told mother "what would happen—what would they say if—if they knew what my father did to me." And Linda testified about the tension cause by J.V.'s decision to live with defendant, including various times when police came to the house to investigate mother's claims that defendant was mistreating J.V.

The mere fact that defendant had filed a petition to formally seek custody of J.V. was, at best, cumulative with other evidence at trial that mother had a motive to encourage M.V. to fabricate her accusation.

Defendant also argues that the family law file would have shown that he filed another custody petition in 2014 for both girls, alleging J.V. brought bomb making materials to school and mother was not properly caring for her. These facts, however, have no apparent relevance to this case since the petition was filed after the 2013 allegations and long before the 2016 allegations were made. The 2016 allegations were not prompted by a custody dispute, as J.V. was in juvenile hall at the time she made her allegations. M.V. then reasserted her allegations in response to J.V.'s allegations.

We find no reasonable probability that Defendant would have received a better outcome had trial counsel investigated the family law file. Defendant's custody dispute

9.

with mother was explored at trial and nothing defendant points to in the family law file would have changed the jury's evaluation of the evidence on that issue. We therefore reject his claim of ineffective assistance of counsel on this ground. This is especially true when defendant himself stated that he would not call his daughters liars when asked about their accusations.

*Failure to Impeach Witnesses*

Defendant also argues trial counsel was ineffective for failing to impeach Officer Storm, M.V. or J.V. with certain inconsistent statements from prior interviews.[7]

At the hearing on the new trial motion, trial counsel was questioned about his review of the audio and video files in preparation for trial. Trial counsel testified that he believed he had the audio and video files in the case file, but he did not prepare transcripts of those files because he was told his investigator had reviewed them and determined that the interviews were not substantially different from the police reports summarizing them. Trial counsel testified that he believed he brought out the inconsistencies he did see by referring witnesses back to their audio or video statements, but he could not recall how many times he had done so and did not play any portions of those interviews for the jury. When asked what his trial strategy was in not impeaching M.V. and J.V. with their inconsistent statements, he testified that he believed he had sufficiently done so in his questioning of both M.V. and J.V. as well as the officers. Trial counsel stated that his strategy was to elicit answers that were favorable or to properly "impeach the witnesses without eliciting additional incriminating evidence," as there is a "fine line" in sexual abuse cases when questioning victims. According to trial counsel, overly aggressive questioning could create sympathy for the victims, and he felt he asked

---

[7]     Defendant also mentions trial counsel's failure to impeach mother but does not specify any of mother's allegedly inconsistent statements he believes should have been challenged.

sufficient questions to impeach their testimony "to the best amount possible" to show contradictions in their testimony.

Following an evidentiary hearing on the new trial motion, the trial court concluded counsel's alleged failures were strategic decisions, were objectively reasonable and, even if mistaken, were not prejudicial. We agree.

We are not convinced that trial counsel's failure to present this evidence at trial was ineffective assistance of counsel. We begin by noting we are bound by the trial court's factual determination that trial counsel's decision was intentional and strategic, rather than inadvertent. That determination is fully supported by the evidence.

Demonstrating that different trial counsel might have adopted a different defense strategy is not enough to prove ineffective assistance of counsel. The manner of cross-examination, including whether or not to impeach a witness, is part of trial counsel's tactical discretion and will rarely be sufficient to show ineffective assistance of counsel. (*People v. McDermott* (2002) 28 Cal.4th 946, 993; *People v. Bolin* (1998) 18 Cal.4th 297, 334.) While in rare cases, deficient cross-examination can be so egregious and prejudicial as to constitute ineffective assistance of counsel, it is generally difficult to establish ineffective assistance based on a deficient cross-examination if counsel's overall performance shows active and capable advocacy. (*Murray v. Carrier* (1986) 477 U.S. 478, 496; *Harrington v. Richter* (2011) 562 U.S. 86, 111.)

Defendant argues that trial counsel should have impeached Officer Storm with the fact that M.V. originally told the officer that defendant penetrated her anally rather than vaginally. While M.V.'s earlier claim was inconsistent with her trial testimony, eliciting this inconsistency may have backfired and elicited more incriminating evidence against defendant.

Defendant also noted that, in M.V.'s initial 2013 interview, she claimed the first incident of abuse occurred when she was seven or eight years old and, in the 2016 interview, she claimed the abuse started when she was nine or 10. Defendant argues this

11.

was inconsistent with her trial testimony in which she claims the abuse started when she was eight or nine. The trial testimony, however, is not wholly inconsistent with the earlier stated ages. In addition, trial counsel was able to show that M.V. was uncertain about the time frame in which the molestations occurred as she conceded that the Playboy channel incident occurred when she was in the fourth or fifth grade. At the hearing on the new trial motion, the trial court did not find M.V.'s "difference in recollection of age to be particularly significant." It was not unreasonable for trial counsel to fail to impeach M.V. or Officer Storm with this evidence.

Defendant next argues that in M.V.'s 2013 interview with Officer Storm, in which M.V. recanted her allegation, M.V. was reluctant to commit to an answer about whether she was molested by defendant, Officer Storm continually pressed her for a definitive answer. The investigator's report had concluded that Officer Storm's report was consistent with the content of the interview, but that it failed to reflect M.V.'s reluctance to provide information. Defendant claims that M.V.'s reluctance is inconsistent with the prosecution's theory that M.V. was pressured by defendant and Linda to recant her story. As argued by defendant, "if MV had been primed to recant by [Linda] and [defendant], it's hard to understand her reluctance to commit to either version of her claims." However, M.V.'s reluctance to provide information to Officer Storm is not necessarily inconsistent with M.V.'s claim that she was not ready to see her father go to jail or that she was pressured into recanting.

Defendant also points to the investigator's summary of J.V.'s 2016 interview, in which he says J.V. told the interviewer that there "was never an occasion wherein [defendant] went off alone with other children in the home." Defendant contends this would rebut E.V.'s claim that defendant would send him and J.V. out of his room while remaining there with M.V. J.V.'s interview, however, is not in the record and it is not possible to assess whether this statement was beneficial to the defense in the context of

12.

the entire interview. Without the statement in context, it cannot be said that trial counsel was ineffective for failing to use the statement as impeachment.

An attorney's decision with respect to how to question a witness is afforded substantial deference, and whether to impeach a trial witness is usually a matter of trial tactics that will not support a claim of ineffective assistance of counsel. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1140.) This is not a situation where the record affirmatively discloses that counsel had no rational tactical purpose or that there was no satisfactory explanation for his decisions not to impeach the witnesses. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) As a result, defendant's claim of ineffective assistance of counsel fails on this ground.

We find none of the alleged pieces of impeachment evidence defendant relies on, either individually or collectively, obligated trial counsel to raise them at trial. These were tactical choices on trial counsel's part and do not rise to the level of ineffective assistance of counsel. In any event, none of the evidence is so compelling that it would have led the jury to doubt M.V.'s credibility. It should also be noted that trial counsel's strategy paid off, as defendant was acquitted of the charge as alleged against J.V., as well as the allegation that he committed a sex offense against more than one victim.

Defendant was not prejudiced by trial counsel's omissions and therefore cannot show ineffective assistance of counsel.

## II.     UNCHARGED ACTS OF MOLESTATION

Defendant next contends that the trial court erred when it allowed M.V. to testify to uncharged acts of molestation. We find no prejudicial error.

At trial, M.V. testified to two specific times she was molested by defendant. She was then asked if those were the "only two times that something happened." M.V. replied that she did remember there were other times, which were the "same as what happened during these two times," but she did not "remember" specific times. She testified that she thought this occurred "[a] few times," which she then described as

13.

"[l]ike ten." Trial counsel objected on grounds of "vague" and "speculation," but was overruled.

Evidence Code section 1108 allows the prosecution to introduce evidence that the defendant in a sexual offense case committed other, uncharged sexual offenses as character evidence, notwithstanding the fact that such evidence is usually inadmissible under Evidence Code section 1101. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*); *People v. Jandres* (2014) 226 Cal.App.4th 340, 352–353.) Evidence Code section 1108 "was intended in sex offense cases to relax the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, *supra*, at p. 911.) A court's decision to admit evidence of an uncharged sexual offense is reviewed for an abuse of discretion. (*People v. Cordova* (2015) 62 Cal.4th 104, 132.)

Defendant contends M.V.'s testimony about the uncharged acts was inadmissible as it was "speculative." We disagree. Usually, testimony is considered speculative when a witness is asked about facts he or she has not personally observed. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 631.) Here, however, M.V. testified to facts she personally experienced. The jury was not asked to draw a "speculative or conjectural inference" from the testimony as argued by defendant but were instead asked to determine whether M.V. was credible as to the uncharged acts despite the fact that she could not recall the details of the incidents.

We also reject defendant's argument that M.V.'s testimony was too vague to meet the "generic testimony" standards set forth in *People v. Jones* (1990) 51 Cal.3d 294, 317. But *Jones* is not applicable here, as it did not deal with admissibility of uncharged acts, but with whether evidence in that case was specific enough to support multiple charges based on conduct occurring over a period of time. (*Id.* at pp. 317–319.) Nothing in *Jones*

14.

imposes minimum specificity requirements on evidence of uncharged acts admitted under Evidence Code section 1108.

Defendant, noting his unsuccessful objection to M.V.'s testimony regarding the uncharged acts, makes a related argument that trial counsel was ineffective for failing to object to the introduction of that evidence under Evidence Code section 352.

Evidence made admissible by Evidence Code section 1108 remains subject to exclusion under Evidence Code section 352 if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.  (Evid. Code, § 352; see *Falsetta, supra,* 21 Cal.4th at pp. 916–917.)  The prejudice that Evidence Code section 352 seeks to avoid is not that which " ' "naturally flows from relevant, highly probative evidence." ' "  (*People v. Harris* (1998) 60 Cal.App.4th 727, 737.)  Rather, prejudice in this context evokes " ' "an emotional bias" ' " or " ' " ' "prejudging" a person or cause on the basis of extraneous factors.' " ' "  (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1115.)

As noted above, the standard for evaluating a claim of ineffective counsel is as follows: "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense."  (*Strickland v. Washington, supra,* 466 U.S. at p. 687.)  To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  (*Id.* at p. 688.)  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Id.* at p. 694.)

"[T]he [defendant] must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel."

15.

(*People v. Williams* (1988) 44 Cal.3d 883, 937; see also *Harrington v. Richter, supra,* 562 U.S. at p. 112 ["The likelihood of a different result must be substantial, not just conceivable"].)

We need not determine whether trial counsel was deficient in not objecting on Evidence Code section 352 grounds to the admission of M.V.'s uncharged acts testimony as defendant has failed to carry his burden of proving prejudice. (*Strickland v. Washington, supra,* 466 U.S. at p. 697 ["[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."].)

When evaluating the prejudicial effect of evidence of uncharged acts, courts balance a number of factors such as "degree of certainty of its commission," how likely it is to distract the jury from the main inquiry, whether it is similar to the charged offense, what sort of prejudicial impact it is likely to have on the jurors, the burden on the defendant in defending against the uncharged offense, and "the availability of less prejudicial alternatives to its outright admission, such as … excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra,* 21 Cal.4th at p. 917.)

Here, the evidence of the uncharged acts had probative value. M.V.'s testimony was brief and lacked inflammatory details. There was no substantial danger of undue prejudice because the circumstances of the additional incidents were no more inflammatory than the circumstances of the current incidents. (*People v. Callahan* (1999) 74 Cal.App.4th 356, 371.) " 'Evidence is not prejudicial, as that term is used in a[n Evidence Code] section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice.... " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on

the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging." ' " ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 438–439.)

Even had the evidence of uncharged acts been excluded, it is not reasonably probable that the result would have been different had trial counsel objected on Evidence Code section 352 grounds.  We therefore reject defendant's claim of ineffective assistance of counsel on this ground as well.

III.    CALCRIM No. 1191

At trial, the trial court instructed the jury with CALCRIM No. 1191, as follows:

> "The People presented evidence that the defendant committed the crimes of a lewd or lascivious act by force or fear on M.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (b), of a lewd or lascivious act on M.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (a) and sexual intercourse with a child ten years of age or younger in violation of Penal Code Section 288.7 that were not charged in this case.  These crimes are defined for you in these instructions.

> "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

> "If the People have not met this burden of proof, you must disregard this evidence entirely.

> "If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit a lewd or lascivious act by force and fear on M.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (b), a lewd or lascivious act on M.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (a), assault with the intent to commit a lewd or lascivious act on M.V., a child under the age of 14 years in violation of Penal Code Section 220 subparagraph (a), or engaging in sexual intercourse with M.V., a child ten years of age or

17.

younger in violation of Penal Code Section 288.7, and a lewd or lascivious act on J.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (a), as charged here.

"If you conclude that the defendant committed the uncharged offenses, the conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of committing a lewd or lascivious act by force and fear on M.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (b), a lewd or lascivious act on M.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (a), assault with the intent to commit a lewd or lascivious act on M.V., a child under the age of 14 years in violation of Penal Code Section 220 subparagraph (a), engaging in sexual intercourse with M.V., a child ten years of age or younger in violation of Penal Code Section 288.7, and a lewd or lascivious act on J.V., a child under the age of 14 years in violation of Penal Code Section 288 subparagraph (a).

"The People must still prove each charge and allegation beyond a reasonable doubt."

Defendant contends the instruction given was incorrect as there was "no substantial evidence of uncharged prior crimes to support the instruction." He also contends the instruction allowed the jury to find the speculative claims of uncharged crimes under a preponderance standard and then use those same crimes from the same witness in finding the charged crimes true, in other words, reducing the prosecution's burden of proof.

We first reject defendant's claim that the instruction, while stating a correct principle of law, had no application in this case. (*People v. Eggers* (1947) 30 Cal.2d 676, 687.) Defendant's contention is based on his previously addressed claim that the evidence relied on in giving the instruction was speculative. As discussed above, M.V.'s lack of recollection of the details of the uncharged acts could factor into the jury's assessment of her credibility, but it did not make her testimony invalid.

We also reject defendant's claim that the instruction reduced the prosecution's burden of proof. As explained in *People v. Phea* (2018) 29 Cal.App.5th 583, 608–609,

18.

our Supreme Court held in *People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1016, that CALJIC No. 2.50.01, the predecessor to CALCRIM No. 1191, is a correct statement of the law, and does not reduce the prosecution's burden of proof. Thus, defendant's argument on the purported reduction of the burden of proof is foreclosed by our high court's analysis and conclusion in *Reliford.* As noted in *People v. Schnabel* (2007) 150 Cal.App.4th 83, 87, "We are in no position to reconsider the Supreme Court's holding in *Reliford* [citation]*,* and by analogy to *Reliford*, we reject defendant's argument regarding the jury instruction on use of his prior sex offenses." We also note that trial counsel specifically addressed the uncharged offenses and the burden of proof in closing argument.

The trial court neither erred nor violated defendant's constitutional rights by instructing the jury with CALCRIM No. 1191.

IV.     SUFFICIENT EVIDENCE OF FORCIBLE LEWD AND LASCIVIOUS ACT

Defendant next challenges the sufficiency of the evidence supporting his conviction for committing a forcible lewd act against M.V. in count 1, pursuant to section 288, subdivision (b)(1). Defendant contends his conviction on this count must be reversed because the evidence was insufficient to establish that he used the requisite physical force in committing the lewd act. We disagree.

" ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People*

*v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.) "[O]ur task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ' " 'be reasonably reconciled with the defendant's innocence.' " ' [Citations.] The relevant inquiry is whether, in light of all the evidence, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Gomez* (2018) 6 Cal.5th 243, 278.)

Section 288, subdivision (a), prohibits any person from committing a lewd or lascivious act on a child under the age of 14 "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Section 288, subdivision (b)(1), further prohibits the commission of such lewd or lascivious act "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." " 'Force, in this context, means physical force that is " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " ' " (*People v. Jimenez* (2019) 35 Cal.App.5th 373, 391; accord, *People v. Soto* (2011) 51 Cal.4th 229, 242 ["[t]his formulation was, and remains, an appropriate definition of the force required for an aggravated lewd conduct conviction under section 288(b), now section 288(b)(1)."]

" 'A defendant uses "force" if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act.' [Citation.] 'The evidentiary key to whether an act was forcible is not whether the distinction between the "force" used to accomplish the prohibited act and the physical contact inherent in that act can be termed "substantial." Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act.' " (*People v. Morales* (2018) 29 Cal.App.5th 471, 480; accord, *People v. Jimenez, supra,* 35 Cal.App.5th at p. 391; *People v. Garcia* (2016) 247 Cal.App.4th 1013, 1024.)

"[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding that the lewd act was committed by means of force." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.) The court in *Alvarez* stated that the defendant's actions of resisting the victim's attempts to push him away when he attempted to kiss her, holding her while he digitally penetrated her, and continuing to put her hand on his penis whenever she moved it away were sufficiently distinct from the lewd conduct to constitute use of force. The court concluded this evidence supported the defendant's conviction for committing a forcible lewd act on a child. (*Id.* at p. 1005.)

Here, M.V. testified that defendant grabbed her arm and pulled her down onto the bed before rubbing her vagina, removing her pants, and having sexual intercourse with her. Citing *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*) and *People v. Senior* (1992) 3 Cal.App.4th 765 (*Senior*), defendant contends, however, that this was an insufficient amount of force to sustain a conviction for a forcible lewd act. His reliance on these cases is misplaced.

In *Schulz, supra,* 2 Cal.App.4th 999, decided by the Sixth District, the evidence showed the defendant "awakened the victim by grabbing her arm, cornered her while she cried, held her arm, and touched her breasts and vaginal area." (*Id.* at p. 1004.) In concluding there was insufficient evidence of force in the commission of the lewd act, the Sixth District reasoned: "We do not regard as constituting 'force' the evidence that defendant grabbed the victim's arm and held her while fondling her. [Citations.] The 'force' factor differentiates the charged sex crime from the ordinary sex crime. Since ordinary lewd touching often involves some additional physical contact, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force.' " (*Ibid.*)

Relying on *Schulz*, the same panel of the Sixth District reached a similar conclusion in *Senior, supra,* 3 Cal.App.4th 765. In that case, the defendant engaged in

21.

multiple acts of oral copulation with the victim during which she "tried to pull away," but he "pulled her back" and "held her shoulders." (*Id.* at p. 771.) The court concluded the evidence was insufficient to establish the requisite use of force, explaining: "Since ordinary oral copulation and digital penetration almost always involve some physical contact other than genital, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force.' There was no evidence here of any struggle, however brief." (*Id.* at p. 774.) In both *Schulz* and *Senior*, the Sixth District acknowledged that its interpretation of "force" was contrary to precedent holding that acts of grabbing, holding, or restraining can be sufficient to constitute a use of force within the meaning of section 288, subdivision (b). (*Schulz, supra,* 2 Cal.App.4th at p. 1004; *Senior, supra,* at p. 774.)

The narrow definition of "force" set forth in *Schulz* and *Senior* has been uniformly criticized. (*People v. Aguilar* (2019) 41 Cal.App.5th 1023, 1027; *People v. Alvarez, supra,* 178 Cal.App.4th at pp. 1004–1005; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1789–1790, disapproved on other grounds in *People v. Soto, supra,* 51 Cal.4th at p. 248, fn. 12; *People v. Babcock* (1993) 14 Cal.App.4th 383, 388.) As one appellate court explained: "[T]he fatal flaw ... in the analyses in *Schulz* and *Senior*, is in their improper attempt to merge the lewd acts and the force by which they were accomplished as a *matter of law*. Unlike the court in *Schulz*, we do not believe that holding a victim who was trying to escape in a corner is necessarily an element of the lewd act of touching her vagina and breasts. Unlike the court in *Senior*, we do not believe that pulling a victim back as she tried to get away is necessarily an element of oral copulation." (*People v. Babcock*, *supra*, at p. 388.) Even the Sixth District has since rejected this aspect of its analyses in *Schulz* and *Senior*, stating: "we respectfully disagree with the interpretation of the 'force' requirement of section 288, subdivision (b) discussed in *Schulz* and *Senior*.... '... As used in that subdivision, "force" means "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." ' " (*People*

*v. Bolander* (1994) 23 Cal.App.4th 155, 160–161, disapproved on other grounds in *People v. Soto, supra,* at p. 241, fn. 12; accord, *People v. Aguilar, supra,* 41 Cal.App.5th at p. 1027 ["*Schulz's* contrary conclusion is mystifying. [¶] ... *Senior* followed *Schulz* and is just as baffling.... [¶] We reject *Schulz* and *Senior.*"; see *People v. Morales, supra,* 29 Cal.App.5th at p. 480 ["this court's brief discussion of force in [*Schulz*] was dicta since this court held that there was substantial evidence of duress"].)

Accordingly, as California courts repeatedly have recognized, " 'acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves' are sufficient to support a finding that the lewd act was committed by means of force." (*People v. Morales, supra,* 29 Cal.App.5th at p. 480 ["defendant's 'grabbing, holding, and restraining' of Jane Doe 1 to facilitate his lewd act was substantial evidence of the requisite force"]; accord, *People v. Jimenez, supra,* 35 Cal.App.5th at p. 393 [jury reasonably could infer defendant used physical force where victim "testified that she tried pushing [defendant] away, and although that would make him stop, 'he would try again and try again' right away"]; *People v. Garcia, supra,* 247 Cal.App.4th at p. 1024 [the defendant's acts of grabbing the victim's hands to keep her from moving while he touched her vagina and holding her on the floor with his body while he placed his penis on her vagina supported conviction for forcible lewd conduct]; *People v. Alvarez, supra,* 178 Cal.App.4th at p. 1005 [sufficient evidence of force where defendant "grabbed [victim's] hand and made her hold his penis," and "[w]henever she let go, he took her hand and brought it back to his genital area"]; *People v. Bolander, supra,* 23 Cal.App.4th at p. 159 ["we conclude that defendant's acts of inhibiting [the victim] from pulling his shorts back up, bending [the victim] over, and pulling [the victim] towards him constitute force within the meaning of subdivision (b)" of section 288]; *People v. Neel, supra,* 19 Cal.App.4th at p. 1790 ["defendant's acts of forcing the victim's head down on his penis when she tried to pull away and grabbing her wrist, placing her hand on his penis, and then 'making it go up and down' constitute force" within meaning of section 288,

23.

subdivision (b)]; *People v. Babcock, supra,* 14 Cal.App.4th at p. 386 [substantial evidence supported defendant's convictions for forcible lewd acts where "evidence demonstrate[d] defendant grabbed [victims'] hands and forced them to touch his genitals"].) Consistent with these authorities, we conclude defendant's conviction under count 1 is supported by substantial evidence.

V.    SECTION 654

Defendant was convicted, in count 1, with committing a forcible lewd and lascivious act on M.V. (§ 288, subd. (b)(1)); in count 2, with assaulting M.V. with the intent to commit a sex offense (§ 220, subd. (a)(2)); and in count 3, with engaging in sexual intercourse with M.V. while she was 10 years of age or younger (§ 288.7, subd. (a)). He was sentenced to 25 years to life on count 3, plus eight years on count 1 and 2 years, four months on count 2.

In his final argument, defendant contends his sentences on counts 1 and 2 should be stayed pursuant to section 654 as all three convictions were based on the same incident which occurred when the Playboy channel was on the television and defendant grabbed M.V.'s arm, rubbed her vagina, pulled down her pants, and had sexual intercourse with her.

Respondent concedes that the conviction on count 2, assaulting M.V. with the intent to commit a sex offense was based on the same physical act of grabbing M.V.'s arm, which made defendant's lewd and lascivious conduct in count 1 forcible. But, respondent contends, defendant is subject to separate punishments for counts 1 and 3, because his act of rubbing M.V.'s vagina was in addition to having intercourse with her. We agree with respondent.[8]

---

[8]    Although M.V. testified defendant committed two acts of sexual intercourse, the jury's verdict form specified that they based their verdict on the incident when the Playboy channel was on television. This was also the occasion when defendant grabbed

24.

"[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations" because "[s]uch offenses are generally 'divisible' from one another ... and separate punishment is usually allowed." (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6; see *id.* at pp. 346, 358 ["Each individual act that meets the requirements of section 288 can result in a 'new and separate' statutory violation," thus defendant was properly convicted of two violations of § 288 where he "fondled an intimate part of [the victim]'s body and also had sexual intercourse with her" during a single encounter]; *People v. Booth* (2018) 25 Cal.App.5th 450, 452 (*Booth*) [trial court had discretion to impose consecutive sentences for multiple oral copulation convictions].)

However, section 654 bars multiple punishments when multiple convictions arise from a single "act or omission that is punishable in different ways by different provisions of law." (§ 654, subd. (a).) Thus, although a single act may give rise to multiple *convictions* under different statutes, a single act may not give rise to multiple *punishments.* (See *People v. Correa* (2012) 54 Cal.4th 331, 336.) "[W]hen a court determines that a conviction falls within the meaning of section 654, it is necessary to impose sentence but to stay the execution of the duplicative sentence …." (*People v. Duff* (2010) 50 Cal.4th 787, 796, italics omitted.)

"In a criminal case, a jury verdict must be unanimous," and "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; see *People v. Brugman* (2021) 62 Cal.App.5th 608, 627.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Russo*, at p. 1132; see *Brugman*, at p. 627.) " 'The prosecution can make an election by "tying each specific count to specific criminal acts elicited from

---

M.V. by the arm, which was the only evidence of Defendant's use of force to accomplish a lewd act.

the victims' testimony"—typically in opening statement and/or closing argument. [Citations.] … [Citation.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it.' " (*Brugman, supra,* at p. 627.) "If the prosecution is to communicate an election to the jury, its statement must be made with as much clarity and directness as would a judge in giving instruction. The record must show that by virtue of the prosecutor's statement, the jurors were informed of their duty to render a unanimous decision as to a particular unlawful act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1539; see *Brugman*, at p. 629.)

Here, the prosecutor argued that defendant's act of grabbing M.V.'s arm was both the basis for the forcible lewd act in count 1 and the assault with the intent to commit a lewd act in count 2. As such, defendant's conviction in count 2, grabbing M.V.'s arm, made the lewd and lascivious act in count 1 forcible, and sentence on count 2 must be stayed.

We also agree with respondent that defendant is subject to separate punishments for count 1 and count 3, as defendant's act of rubbing M.V.'s vagina did not merely facilitate the sexual intercourse, and he can be separately punished for those acts. Because defendant's sexual intercourse and lewd act convictions were based on separate underlying acts, section 654 did not preclude separate punishments for those acts. (See *People v. Scott, supra,* 9 Cal.4th at p. 344, fn. 6; *People v. Booth, supra,* 25 Cal.App.5th at p. 452.)

## DISPOSITION

The judgment is modified to stay the execution of the sentence imposed on count 2 pursuant to section 654. The trial court is directed to amend the abstract of judgment to reflect the judgment as modified and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

26.

FRANSON, J.

WE CONCUR:


HILL, P. J.


DETJEN, J.