Mihara, J.
*473 Defendant Ernesto Vega Morales was convicted by jury trial of four counts of committing a lewd act on a child under 14 ( Pen. Code, § 288, subd. (a) ),[1] one count of committing a forcible lewd act on a child under 14 ( § 288, subd. (b) ), one count of sexual penetration of a child age 10 or younger (§ 288.7, subd. (b) ), two counts of criminal threats (§ 422), and two counts of dissuading a witness by threat of force (§ 136.1, subd. (c)(1) ). The jury found true an allegation that defendant had committed sexual offenses *474 against multiple victims (§ 667.61, subd. (e)(4) ). The court committed defendant to state prison for a term of 75 years to life consecutive to a six-year determinate term.
On appeal, defendant contends that (1) the trial court violated his Sixth Amendment rights when it refused to allow him to substitute retained counsel for his appointed trial counsel on the eve of trial, (2) two of the lewd act counts, the forcible lewd act count, the criminal threats counts, and the dissuading counts are not supported by substantial evidence, (3) the prosecutor committed misconduct by commenting in rebuttal argument on defendant's courtroom conduct, (4) the court made sentencing errors, and (5) his sentence is unconstitutionally cruel and unusual.
The Attorney General concedes that the one lewd act count involving Jane Doe 1 must be stricken because it was a lesser included offense of the forcible lewd act count involving Jane Doe 1. We agree and will direct the trial court to strike that count. Although we reject defendant's other contentions, we reverse and remand for resentencing because we conclude that the trial court imposed unauthorized 15 years to life terms for three counts rather than the 25 years to life terms that were statutorily mandated for those counts. Consequently, we do not address defendant's cruel and unusual punishment contention, *502 which he may raise in the trial court at the resentencing hearing.
I. Evidence Presented at Trial
In the summer of 2004, Jane Doe 3 was seven years old and living in Salinas with her mother. Jane Doe 3's grandfather lived in a trailer park in Alisal. The grandfather's trailer was next door to the trailer where defendant lived with his wife and children. Jane Doe 3 "really enjoy[ed]" visiting her grandfather. She sometimes played with defendant's "little boys."
Around July 4, 2004, Jane Doe 3 was in defendant's trailer with his boys watching "Family Guy" on television. Defendant "just kind of moved me like onto his lap a little bit, and he unzipped my pants and was just touching me like over my underwear." Defendant "put his finger inside the zipper over the underwear and was rubbing" her "vagina." He asked Jane Doe 3 "if I liked it and if it had felt good." Jane Doe 3 "knew it wasn't normal." She told defendant "that I had to be home for dinner that my grandpa wanted me to come back," and she "[g]ot up and left." After that she "didn't want to go back" to her grandfather's because she did not want to see defendant. A few days later, Jane Doe 3 told her older sister what had happened, but she asked her sister not to tell anybody.
Jane Doe 3's mother noticed that "all the [sic ] sudden Jane Doe Three did not want to go see grandpa." On September 11, 2004, Jane Doe 3's older *475 sister told Jane Doe 3's mother that defendant "had been touching" Jane Doe 3. Jane Doe 3's mother contacted the police, and she, Jane Doe 3, and Jane Doe 3's older sister were interviewed by the police. Jane Doe 3's mother told the police that "I could not press charges" because the grandfather was "terminally ill" and her husband was "already so angry that this happened." Jane Doe 3's mother took care thereafter when the family visited the grandfather to keep their presence unknown to defendant, but Jane Doe 3 remained fearful that she would encounter defendant. The grandfather died in January 2005, and Jane Doe 3 and her family never returned to the trailer park after that.
In the fall of 2013, Jane Doe 2 was eight or nine years old and her best friend Jane Doe 1 was seven or eight years old. Jane Doe 2 and Jane Doe 1 lived with their families in an apartment complex in Salinas. Near the back of the apartment complex was a big fruit tree with a swing in it.[2] Defendant lived in a little house next to the big tree. Children who lived in the apartment complex played in the green area next to the big tree. Defendant frequently played with the children, including his nephews, in the tree area.[3]
One day in 2013, Jane Doe 1 was pushing Jane Doe 2 on the swing in the big tree. Jane Doe 1 decided to climb the tree, and she "went in back of the tree" to do so.[4] Jane Doe 2 remained on the swing, where she could not see Jane Doe 1. As Jane Doe 1 was starting to climb the tree, *503 defendant came up behind her, picked her up with his hands on her back and "bottom," held her body against his, threw her over his shoulder as she "was trying to get out of him," and carried her behind the tree. She could not move her arms while he was carrying her. Defendant held her up against the side of the tree and then lifted her up onto the trunk of the tree. While defendant was holding Jane Doe 1 so that she could not move, he put his hand under her pants, under her underwear and began "like rubbing it" in a circular motion. She felt his finger go inside her private parts.
Jane Doe 1 told defendant "I will tell my parents," and he removed his hand and replied that he would "try to hurt my family." Jane Doe 1 was "scared," and she pushed defendant away. She "threw [her]self to the *476 ground," and she and Jane Doe 2 ran away. Jane Doe 1 did not tell anyone because she was "scared" that defendant "might hurt my parents."
On two different days in 2013, "a few days" apart, defendant touched Jane Doe 2 while she was on the swing in the big tree. Defendant did this after he had told the other children who were playing in the area to go dig holes in a different part of the yard. The boys left, but Jane Doe 1, who was also there, "stayed" with Jane Doe 2.[5] After the boys left, defendant touched Jane Doe 2's waist area on her ribs with both hands. On another occasion in 2013, Jane Doe 2 was standing next to the tree, and defendant touched her on the middle side of her thigh. He "tr[ied] to touch" her "private parts," but he "stopped" when she "was going to start crying."
Jane Doe 2 did not tell her mother that defendant had touched her "[b]ecause he said he was going to kill all my family." Defendant's threat made Jane Doe 2 "[a]fraid" and "fear[ful]." Defendant never picked Jane Doe 2 up or put her in the tree. Jane Doe 2 told Jane Doe 1 about defendant's threat, and Jane Doe 1 told Jane Doe 2 that if Jane Doe 2 told her parents defendant would hurt them. Jane Doe 2 and her family moved away from Salinas in December 2013 when Jane Doe 2 was nine years old. Jane Doe 2 and Jane Doe 1 never saw each other again.
In March 2015, Jane Doe 1's mother took Jane Doe 1 to a doctor's appointment. Before they saw the doctor, Jane Doe 1 asked her mother if the doctor was "going to check up on her private parts." Her mother said yes, and Jane Doe 1 "started crying." Jane Doe 1 then disclosed to her mother that defendant had touched her private parts. Her mother contacted the police. Jane Doe 1 told the police that defendant had also touched Jane Doe 2. She also told the police that she had not told anyone earlier that she had been molested because defendant "was going to harm her family."
Defendant was interviewed by the police. He initially denied having any contact with Jane Doe 1. As the interview progressed, he admitted he "would play with her [Jane Doe 1], that I carried her like this, that I pushed her on the swing." "I did pick [Jane Doe 1] up and I took her to the tree." He eventually admitted that there was "just one time" when "my hand slipped" "over there" on her upper inner thigh, and the child "told me to remove my hand from her and put her down." "[B]ut I didn't do it on purpose, nor with bad intentions." Defendant was arrested.
*477 II. Discussion
A. Denial of Substitution *504 of Counsel Motion**
B. Substantial Evidence
Defendant contends that two of the lewd act counts, the forcible lewd act count, the criminal threats counts, and the dissuading counts are not supported by substantial evidence.
Our standard of review is well established. "[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ( People v. Reilly (1970) 3 Cal.3d 421, 425, 90 Cal.Rptr. 417, 475 P.2d 649 ; accord People v. Pensinger (1991) 52 Cal.3d 1210, 1237, 278 Cal.Rptr. 640, 805 P.2d 899.) A trier of fact may rely on inferences to support a conviction only if those inferences are "of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt" that the inferred facts are true. ( People v. Raley (1992) 2 Cal.4th 870, 890-891, 8 Cal.Rptr.2d 678, 830 P.2d 712.) "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." ( People v. Bloom (1989) 48 Cal.3d 1194, 1208, 259 Cal.Rptr. 669, 774 P.2d 698.)
1. Lewd Act Counts
a. Jane Doe 2
Defendant claims that there was insufficient evidence to support a finding of lewd intent as to the two lewd acts on Jane Doe 2 because Jane Doe 2's testimony about the touchings was "extremely vague," she did not describe how he " 'tried' to touch her private part," and "pushing a child on a swing" is "commonplace" and "innocent" activity.[9]
Jane Doe 2's testimony was not vague. She was quite specific in describing the nature of the touchings. Twice defendant touched Jane Doe 2's waist area *478 on her ribs with both hands while pushing her on the swing. Another time, defendant touched the middle side of her thigh and "tr[ied] to touch" her "private parts" as she stood by the tree. He "stopped" trying to touch her private parts only when she "was going to start crying." She also testified that defendant told her that if she disclosed his conduct "he was going to kill all my family."
Defendant inaccurately claims that Jane Doe 2 did not explain what she meant when she testified that defendant had tried to touch her private parts.[10] She testified that she saw "[h]is hands almost trying to touch my private parts," and his hands were "[a]lmost practically close to my private parts." Since the approach of his hands to her private parts followed his touching of the middle of her thigh, her testimony left no uncertainty or vagueness as to the precise nature of defendant's conduct.
Finally, there was plenty of evidence that defendant's conduct was motivated by a lewd intent. "Conviction under [ section 288 ] has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim. [Citations.] Stated differently, a lewd or lascivious *505 act can occur through the victim's clothing and can involve 'any part' of the victim's body." ( People v. Martinez (1995) 11 Cal.4th 434, 444, 45 Cal.Rptr.2d 905, 903 P.2d 1037 ( Martinez ).) "[T]he lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent. It is common knowledge that children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing. On the other hand, any of these intimate acts may also be undertaken for the purpose of sexual arousal. Thus, depending upon the actor's motivation, innocent or sexual, such behavior may fall within or without the protective purposes of section 288.... [T]he only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances." ( Martinez , at p. 450, 45 Cal.Rptr.2d 905, 903 P.2d 1037.) The relevant circumstances include "the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection [citation]." ( Martinez , at p. 445, 45 Cal.Rptr.2d 905, 903 P.2d 1037.)
Here, "all of the circumstances" showed that defendant's touchings of Jane Doe 2 were done with a lewd intent. While defendant's conduct in touching Jane Doe 2 as he pushed her on the swing did not by itself disclose a lewd intent, the fact that on another occasion he touched her thigh and reached out toward her private parts, stopping only when she started crying, was indicative of his sexual intent on all three occasions. Defendant's coercive threat *479 confirmed his own understanding of the illicit nature of his touchings of Jane Doe 2. Furthermore, defendant's touchings of the other Jane Does, which occurred under extremely similar circumstances to his touchings of Jane Doe 2, and were unmistakably sexually motivated, supported a reasonable inference that his touchings of Jane Doe 2 were similarly motivated.
Defendant relies heavily on People v. Mansell (1964) 227 Cal.App.2d 842, 39 Cal.Rptr. 187 ( Mansell ). In Mansell , the prosecution appealed after an information alleging two section 288 counts against two little girls was set aside by the superior court. One of the little girls had testified that Mansell, a neighbor, held her on his lap, " 'put his hand under my shorts and in between my legs,' " and " 'moved his fingers.' " ( Mansell , at p. 843, 39 Cal.Rptr. 187.) The other little girl testified that Mansell held her on his lap and touched her " '[b]etween my legs.' " ( Id. at pp. 844-845, 39 Cal.Rptr. 187.) A third girl witnessed this conduct and confirmed that Mansell's " 'hands was [sic ] in between their legs.' " ( Id. at p. 845, 39 Cal.Rptr. 187.) She also testified that Mansell " 'stopped and moved his hands from the leg' " when he saw her watching. ( Id. at p. 846, 39 Cal.Rptr. 187.) Despite this evidence, the Court of Appeal found that defendant's conduct was such "commonplace behavior" that it did not suggest a lewd intent, and the court affirmed the dismissal of the case. ( Mansell , at p. 848, 39 Cal.Rptr. 187.)
We cannot accept the reasoning in Mansell . (See People v. Gilbert (1992) 5 Cal.App.4th 1372, 1380, 7 Cal.Rptr.2d 660 [distinguishing Mansell ].) The evidence in Mansell clearly supported an inference of lewd intent. An adult neighbor touched two little girls "between their legs" and "moved his fingers," and he "stopped" only when he noticed that his conduct had been observed. An examination of all of the circumstances reasonably supported an inference of lewd intent. Perhaps the opinion in Mansell was a product of its time, half a *506 century ago, when our knowledge of child molestation was less developed. Nevertheless, we feel compelled to point out its invalidity so that it does not continue to impact our jurisprudence on this issue.
Defendant contends that evidence of his touchings of the other Jane Does cannot support a finding of the requisite specific intent as to Jane Doe 2 because Evidence Code section 1108 evidence cannot by itself support a conviction. Since the Evidence Code section 1108 evidence was not alone in supporting the two lewd act counts involving Jane Doe 2, this contention lacks its premise.
Finally, defendant maintains that the evidence does not support two counts, rather than one, because, in his view, "Jane Doe 2 did not describe two separate instances ...." He cites neither Jane Doe 2's testimony nor any legal authority to support this claim. In fact, Jane Doe 2 described three separate touchings. She testified that the two touchings that occurred while *480 she was on the swing occurred on two different days in 2013, "a few days" apart. And her testimony about the touching that occurred when she was standing next to the tree made clear that it too occurred on a separate occasion. We reject defendant's challenge to the sufficiency of the evidence to support the two lewd act counts involving Jane Doe 2.
b. Jane Doe 1
Defendant claims that there was insufficient evidence of force to support the forcible lewd act count involving Jane Doe 1.
"A defendant uses 'force' if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act." ( People v. Bolander (1994) 23 Cal.App.4th 155, 163, 28 Cal.Rptr.2d 365 (Mihara, J. concurring).) "The evidentiary key to whether an act was forcible is not whether the distinction between the 'force' used to accomplish the prohibited act and the physical contact inherent in that act can be termed 'substantial.' Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act." ( Id. at pp. 163-164, 28 Cal.Rptr.2d 365.) "[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding that the lewd act was committed by means of force. ( People v. Alvarez (2009) 178 Cal.App.4th 999, 1005, 101 Cal.Rptr.3d 169.)
Defendant's version of the facts in his brief bears no resemblance to Jane Doe 1's actual testimony about the circumstances of his forcible lewd act on her. She testified that he came up behind her, picked her up, held her body against his, threw her over his shoulder, overcame her resistance, and carried her behind the tree. Jane Doe 1 testified that defendant held her in such a manner that she could not move while he positioned her up against the trunk of the tree and penetrated her private parts with his finger. This testimony amply established that defendant used force to facilitate the lewd act, rather than merely incidentally touching Jane Doe 1 in the course of the lewd act. Defendant's contention lacks merit. His reliance on People v. Schulz (1992) 2 Cal.App.4th 999, 3 Cal.Rptr.2d 799 ( Schulz ) is misplaced because this court's brief discussion of force in that case was dicta since this court held that there was substantial evidence of duress. ( Schulz , at pp. 1004-1005, 3 Cal.Rptr.2d 799.) In this case, defendant's "grabbing, holding, and restraining" of Jane Doe 1 to facilitate his lewd act was substantial evidence of the requisite force.
*507 Defendant contends that there was not substantial evidence to support two section 288 counts involving Jane Doe 1. As to Jane Doe 1, defendant was convicted of one section 288, subdivision (a) count, one *481 section 288, subdivision (b) count, and one section 288.7 count. It was undisputed at trial that the two section 288 counts were based on a single act. The Attorney General properly concedes that the section 288, subdivision (a) count cannot be upheld as it is a lesser included offense of the section 288, subdivision (b) count. ( People v. Chan (2005) 128 Cal.App.4th 408, 421, 26 Cal.Rptr.3d 878.) We will direct the superior court to strike the section 288, subdivision (a) count involving Jane Doe 1.
2.-3.***
C. Prosecutorial Misconduct†
D. Sentencing Issues
1. Life Term for Section 288.7 Count††
2. Life Term for Section 288 Count Involving Jane Doe 3
Defendant contends that the trial court erred in imposing a life term for the section 288, subdivision (a) count involving Jane Doe 3 because that offense occurred in 2004, before section 667.61 was amended to apply to all section 288, subdivision (a) offenses.
The 1998 version of section 667.61, which was in effect in 2004, provided that section 667.61 applied to "(7) A violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066." (Stats. 1998, ch. 936, § 9.) In 2004, the 1997 version of section 1203.066 was in effect. Subdivision (a) of that statute provided: "Notwithstanding Section 1203 or any other law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons: [¶] ... [¶] (7) A person who is convicted of *482 committing a violation of Section 288 or 288.5 against more than one victim."[13] (Stats. 1997, ch. 817, § 13.)
Subdivision (d) of the 1997 version of section 1203.066 provided: "The existence of any fact that would make a person ineligible for probation under subdivision (a) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury." (Stats. 1997, ch. 817, § 13.) The accusatory pleading in this case did not allege that defendant was ineligible for probation for the section 288 count against Jane Doe 3, but it did allege the "fact that would make a person ineligible for probation." That is, the information alleged that defendant "has been convicted in the present case of committing an offense against more than one victim." This allegation was found true by the jury. It follows that defendant fell within section 667.61 as it read in 2004 and could properly *508 be sentenced to a life term for the section 288, subdivision (a) count involving Jane Doe 3. (See People v. Woodward (2011) 196 Cal.App.4th 1143, 1149-1153, 127 Cal.Rptr.3d 117.)
3. Imposition of Multiple Life Terms Under Section 667.61
Defendant maintains that the trial court erred in imposing multiple life terms under section 667.61 because, in his view, section 667.61's multiple victim circumstance "authorizes only one life term for qualifying offenses against more than one victim on multiple separate occasions."
The court imposed one life term for the forcible lewd act count against Jane Doe 1, two life terms for the two lewd act counts against Jane Doe 2, and one life term for the lewd act count against Jane Doe 3.[14] Defendant *483 claims that there should have been just one life term rather than four for these counts. Every court that has ever considered this issue has rejected defendant's contention that section 667.61 does not permit multiple life terms to be imposed based on the multiple-victims circumstance.
In People v. DeSimone (1998) 62 Cal.App.4th 693, 73 Cal.Rptr.2d 73 ( DeSimone ), the Second District Court of Appeal rejected the defendant's argument that section 667.61 permits only one life sentence per case based on the multiple-victims circumstance. It held that section 667.61 "applies to any conviction of a qualifying sexual offense when the defendant stands currently convicted of at least one other such offense against a different victim. It does not include any language which specifically provides that unlike all the other enumerated circumstances in the One Strike law, it [ (the multiple-victims circumstance) ] may be used only once in a particular case."[15] ( DeSimone , at pp. 697-698, 73 Cal.Rptr.2d 73.) In People v. Murphy (1998) 65 Cal.App.4th 35, 76 Cal.Rptr.2d 130 ( Murphy ), the Second District held that, where the section 667.61 multiple-victims circumstance is found true, "[t]he only limitation on the number of life sentences which can be imposed is contained in section 667.61 subdivision (g), which provides that the defendant shall be sentenced to one life term per victim per occasion no matter how many offenses listed in subdivision (c) the defendant committed against a particular victim on a particular occasion." ( Murphy , at p. 40, 76 Cal.Rptr.2d 130, italics added.) Murphy involved two separate victims, one of whom was the victim of multiple offenses on a single occasion. Hence, the defendant was *509 eligible for only two life terms.[16] ( Murphy , at pp. 40-41, 76 Cal.Rptr.2d 130.)
In People v. Valdez (2011) 193 Cal.App.4th 1515, 124 Cal.Rptr.3d 376 ( Valdez ), the defendant was convicted of seven lewd act counts against three victims, and a section 667.61 multiple-victims allegation was found true. ( Valdez , at p. 1518, 124 Cal.Rptr.3d 376.) The trial court imposed four life terms, which included two life terms for offenses against a single victim on multiple occasions. ( Valdez , at pp. 1518-1520, 124 Cal.Rptr.3d 376.) The defendant claimed that section 667.61's multiple-victims circumstance could not support the imposition of multiple life terms for offenses against a single victim. ( Valdez , at p. 1518, 124 Cal.Rptr.3d 376.) The Second District rejected this claim on the ground that it "contradicts the statute's legislative *484 intent as determined by the usual and ordinary meaning of the words of the enactment." ( Valdez , at p. 1522, 124 Cal.Rptr.3d 376.)
We agree with these cases. And it is worth noting that, while the California Supreme Court has never ruled on this issue, it has cited DeSimone with apparent approval and noted that section 667.61 "contemplates a separate life term for each victim attacked on each separate occasion." ( People v. Wutzke (2002) 28 Cal.4th 923, 931, 123 Cal.Rptr.2d 447, 51 P.3d 310.) In the end, it is the statutory language that prevails.
The 1998 version of section 667.61, which was in effect when defendant's offense against Jane Doe 3 occurred, provided: "The [life] term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple-victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats. 1998, ch. 936, § 9.) By providing that "[t]he [life] term ... shall be imposed on the defendant once for any offense ... against a single victim during a single occasion," this version of section 667.61 mandated a term of 15 years to life for defendant's lewd act on Jane Doe 3.
The current version of section 667.61, which was in effect when defendant committed the counts against Jane Doe 1 and Jane Doe 2, does not contain the language that used to be in subdivision (g). Instead, current subdivision (j)(2) provides: "Any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life ." (§ 667.61, subd. (j)(2), italics added.)
We requested supplemental briefing from the parties addressing whether the trial court's imposition of 15 years to life terms for the three lewd act counts against Jane Doe 1 and Jane Doe 2 rather than 25 years to life terms was an unauthorized sentence. Defendant responded by conceding that the trial court had erred in this regard.[17] The Attorney General *510 agreed and asked *485 us to "modify the judgment" and "direct the superior court to modify the abstract of judgment accordingly."
We accept defendant's concession, but we decline the Attorney General's invitation to simply modify the trial court's judgment. Since the trial court did not contemplate 25 years to life terms for these counts, we cannot determine whether it would have structured defendant's sentence differently under these circumstances. Hence, we must remand to the trial court for resentencing. Because the trial court may reconsider all aspects of defendant's sentence on remand, it would be premature for us to consider whether defendant's sentence is unconstitutionally cruel and unusual.[18]
III. Disposition
The judgment is reversed, and the matter is remanded with directions to strike the section 288, subdivision (a) count involving Jane Doe 1 and to resentence defendant.
WE CONCUR:
Greenwood, P. J.
Elia, J.

Subsequent statutory references are to the Penal Code unless otherwise specified.

Jane Doe 2's mother testified that the swing was a tire. Jane Doe 2 testified that the swing was not a tire but a flat rectangle made of wood. However, she also said that she did not remember what kind of swing it was. Jane Doe 1's mother testified that there was both a tire swing and a wood swing in the big tree. Jane Doe 1 described the swing as "made out of wood." She testified that there was only one swing.

Defendant was "always" drinking beer while he played with the children, and he was "very often" "[d]runk."

She had climbed the tree before, and it was a good tree for climbing "[b]ecause it kind of like has some steps." The "steps" were "natural bumps" on the tree.

Jane Doe 1 testified that she saw defendant push Jane Doe 2 on the swing a few times.

See footnote *, ante .

Defendant's defense at trial was that he had touched the Jane Does with an "innocent" intent. Defendant's trial counsel argued to the jury: "I think it's pretty clear [defendant] touched them. The question is did he touch them in a lewd and lascivious manner or did he touch them in an innocent manner."

She also explained that she thought defendant intended to touch her private parts because Jane Doe 1 had told her that defendant had touched Jane Doe 1's private parts.

See footnote *, ante .

See footnote *, ante .

See footnote *, ante .

This paragraph "shall not apply" where the court "makes all of the following findings: [¶] (1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household." (Stats. 1997, ch. 817, § 13.) Defendant does not claim that this exception applied or that its inapplicability had to be alleged in the information.

The court imposed 15 years to life terms for each lewd act count, for the forcible lewd act count, and for the sexual penetration count. The sentence for the lewd act count against Jane Doe 1 was stayed "as his conduct is the same conduct" as the forcible lewd act count against Jane Doe 1. We have already decided that this lewd act count must be stricken because it was a lesser included offense of the forcible lewd act count. Since the sexual penetration count did not qualify for sentencing under section 667.61 and a life term was proper imposed under section 288.7, the only life terms at issue here are the four life terms imposed for the forcible lewd act count against Jane Doe 1, the two lewd act counts against Jane Doe 2, and the lewd act count against Jane Doe 3.

The Second District did not consider in DeSimone whether more than one life term could be imposed under section 667.61 based on the multiple-victims circumstance for multiple offenses against a single victim. (DeSimone , supra , 62 Cal.App.4th at p. 698, fn. 2, 73 Cal.Rptr.2d 73 ["We are not called upon to consider whether the subdivision (e)(5) circumstance could attach to more than one count involving the same victim. Our discussion here is limited to whether it is proper to impose one life term per victim under subdivision (e)(5)."].)

People v. Stewart (2004) 119 Cal.App.4th 163, 14 Cal.Rptr.3d 353 (Stewart ), another Third District case, agreed with Murphy and held that, under section 667.61, subdivision (g), the defendant could not be subjected to three life terms for three offenses against the same victim on the same occasion. (Stewart , at p. 174, 14 Cal.Rptr.3d 353.)

Defendant's appellate counsel also attempted to raise several previously unbriefed sentencing issues in his supplemental letter brief. We struck that portion of his letter brief since the Attorney General had never had an opportunity to address those issues, which had not been raised in defendant's opening or reply briefs, and they were not within the scope of our request for briefing. Although defendant's appellate counsel sought (in a footnote in the supplemental brief) leave to file a supplemental brief on these additional issues, we denied leave. Since we are remanding this matter to the trial court for resentencing, any contentions regarding the application of section 654, consecutive sentencing, or cruel and unusual punishment may be addressed at the resentencing hearing.

At the sentencing hearing, the court characterized defendant as "certainly a danger," said "I'm not sure that menace is even a strong enough word," and concluded that defendant was "an individual who does need to be excised from our community permanently." The court identified numerous circumstances in aggravation and gave multiple reasons for selecting consecutive sentences.