Filed 6/8/23 P. v. Perez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079131 |
| v. | (Super. Ct. No. . FSB21002330) |
| ERIK JESUS PEREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Cheryl C. Kersey, Judge. Affirmed.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury found defendant and appellant Erik Jesus Perez guilty of one count of committing a lewd act upon a child under age 14 (Pen. Code,[1] § 288, subd. (a)). The trial court sentenced defendant to three years in state prison and awarded 542 days of credit for time spent in custody. Defendant's sole contention on appeal is that there is insufficient evidence to support his conviction. We disagree and therefore affirm the judgment.

## II.

## FACTUAL BACKGROUND

Defendant is Jane Doe's uncle. On October 1, 2020, defendant was staying with Jane Doe, her mother, grandmother, and two younger siblings in a two-bedroom apartment in Colton. Jane Doe was 13 years old and defendant was 29 years old at the time. Normally, Jane Doe slept in a room with her siblings and grandmother, her mother occupied the other room, and defendant slept in the living room either on the couch or floor.

On the evening of October 1, 2020 at around 10:00 p.m., Jane Doe and her two siblings went to sleep in the same bed. Later that night, Jane Doe heard defendant making loud noises in the kitchen, causing her to be awoken from her sleep. Defendant entered the room and tapped on Jane Doe's shoulder, which caused her to be further

---

[1] All future statutory references are to the Penal Code.

awakened. He asked Jane Doe twice to "'get on the floor.'" After she refused, Jane Doe walked to the bathroom, and defendant followed her. While in the bathroom, defendant grabbed Jane Doe's shoulders and moved his face within two inches of her face. She believed defendant was trying to kiss her. Jane Doe then moved around defendant and started to leave the bathroom. Defendant, however, grabbed her arm and unsuccessfully tried to guide her back towards him. Defendant then got on the floor and unbuckled his jeans.

Jane Doe walked across the apartment towards her mother's bedroom, and defendant followed her from behind. Before she made it to her mother's bedroom, defendant said "'No. I'm sorry. Don't tell your mom.'"

Defendant then asked Jane Doe to sit down on the couch with him. She sat down on the couch, as did defendant. He told Jane Doe multiple times that what happened was "'not weird.'" One time he said it by whispering in her ear. Jane Doe responded by stating "'It is weird'" because he is her uncle. Jane Doe observed that defendant had drank alcohol that night.

As Jane Doe was responding to defendant, Jane Doe's mother came out of her bedroom. At this point, Jane Doe was scared and confused. Her mother observed that she looked nervous and pale. Jane Doe told her mother what happened, and her mother asked if she was telling the truth, and she said she was. Jane Doe's mother reminded defendant that he was Jane Doe's uncle and kicked defendant out of the apartment.

The following day, Jane Doe went to her father's residence and told him what defendant had done. Jane Doe's father then took her to the police station. Jane Doe's interview with the investigating officer was played for the jury. The transcript of Jane Doe's statements to the officer was also admitted at trial. The transcript of Jane Doe's statements about a year after the incident at the Children's Assessment Center (CAC) was also admitted into evidence, and Jane Doe's statements to the CAC interviewer was played for the jury at trial.[2]

Defendant did not testify and did not call any witnesses.

III.

DISCUSSION

Defendant's sole contention on appeal is that there is insufficient evidence to support his conviction because the evidence is insufficient to establish his lewd intent when he touched Jane Doe. We disagree.

In considering a challenge to the sufficiency of the evidence to support a judgment of conviction, we review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is reasonable, credible, and of solid value, from which a rational jury could find the elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Manibusan* (2013) 58 Cal.4th 40, 87;

_____

[2] Some of the statements made by Jane Doe at trial were inconsistent with her statements to the investigating officer and the CAC interviewer.

4

*People v. Wilson* (2020) 56 Cal.App.5th 128, 153.) We focus "'on the whole record . . . , rather than on '"isolated bits of evidence."'"' (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329, italics omitted.) Reversal is required only if "'it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'"' (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Nonetheless, "a reasonable inference from the evidence ""'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.'"'" (*People v. Sanford* (2017) 11 Cal.App.5th 84, 91-92.)

Section 288, subdivision (a) provides in relevant part: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." Thus, the offense has two elements: "'"(a) the touching of an underage child's body (b) with a sexual intent."'" (*People v. Villagran* (2016) 5 Cal.App.5th 880, 890.) "'Any touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.'" (*People v. Shockley* (2013) 58 Cal.4th 400, 404; accord, *People v. Martinez* (1995) 11 Cal.4th 434, 445 (*Martinez*).) The testimony of the victim of a lewd and

5

lascivious act may be sufficient by itself to establish the elements of the crime. (Evid. Code, § 411; *People v. Westek* (1948) 31 Cal.2d 469, 473; *People v. Harlan* (1990) 222 Cal.App.3d 439, 454.)

Many kinds of touching have been held sufficient to meet the first element of section 288, subdivision (a). For example, in *People v. Levesque* (1995) 35 Cal.App.4th 530, the appellate court held that a defendant's contact in placing a child over his knees and pulling down her pants satisfied the touching requirement where there was other evidence of defendant's intent. (*Id.* at p. 543.) Here, defendant's acts of grabbing Jane Doe's shoulder in the bathroom and getting two inches from her mouth, and grabbing her arm in the bathroom to stop her from leaving sufficed to meet the touching element of the lewd act charge when examining the entire record.

Defendant contends, however, that the evidence adduced at trial in this case was insufficient to support the conclusion that these acts were done with the intention of arousing, appealing to, or gratifying the lusts, passions or sexual desires of Jane Doe.

Whether the touching was done with lewd intent depends on the surrounding circumstances, all of which can be considered by the jury. (*Martinez*, *supra*, 11 Cal.4th at p. 445.) Circumstances include, but are not limited to, the "defendant's extrajudicial statements . . . other acts of lewd conduct admitted or charged in the case . . . the relationship of the parties . . . or deceit used to obtain the victim's cooperation or avoid detection." (*Ibid.*, internal citations omitted.)

6

In this case, the evidence demonstrates that defendant touched Jane Doe with lewd intent when he grabbed Jane Doe's shoulders and tried to kiss her in the bathroom, and when he grabbed her arm and tried to guide her back into that bathroom in context of the totality of the circumstances. Although defendant did not kiss Jane Doe, touch her private parts, threaten her, or physically harm her, the touching itself does not need to be inherently lewd or forceful. (See *Martinez*, *supra*, 11 Cal.4th at pp. 442, 451-452 [it is not necessary that a child be touched in an "inherently lewd manner"].) Indeed, any touching is sufficient so long as the touching is committed with lewd intent. (*Ibid.*) Defendant's lewd intent can be shown by his act of grabbing Jane Doe's shoulders and attempting to kiss her and later trying to get Jane Doe on the floor with him while he was starting to unbuckle his jeans. (See *People v. Morales* (2018) 29 Cal.App.5th 471, 478-479) [appellate court reasoned that all of the circumstances, including the defendant's prior and subsequent conduct, established his sexual intent at the time of the touching at].) Before defendant grabbed Jane Doe's shoulders and tried to kiss her, he asked her to get on the floor twice. After he grabbed her arm and tried to guide her back into the bathroom, defendant laid on the ground and tried to unbuckle his pants. Furthermore, defendant tried to persuade Jane Doe not to tell her mother and convince her that his behavior was not weird. A jury could infer defendant's acts were done with the intention of arousing, appealing to, or gratifying the lusts, passions or sexual desires of Jane Doe.

Where, as here, the defendant's physical conduct is equivocal, and might be consistent with a non-lewd intention, the jury can look to surrounding circumstances and

7

rely on them to draw inferences about his intent. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1365.) The surrounding circumstances here support that inference. We conclude there is sufficient evidence to support the determination defendant was acting with lewd and lascivious intent when he touched Jane Doe, and thus sufficient evidence to support his conviction for violation of section 288, subdivision (a).

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


FIELDS
J.


RAPHAEL
J.

8