Filed 2/5/25  P. v. Pacheco CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OCTAVIO MEJIA PACHECO,<br><br>Defendant and Appellant. | F086506<br><br>(Super. Ct. No. MCR066398)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Audrey R. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found Octavio Mejia Pacheco (defendant) guilty of molesting two preteen girls.  Defendant challenges the sufficiency of evidence supporting one of four convictions under Penal Code section 288.  (All undesignated statutory references are to

the Penal Code.) He further alleges instructional error and sentencing error. Finding no merit in these claims, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with committing lewd or lascivious acts by means of force or fear upon a child (victim 1) under the age of 14 years. (§ 288, subd. (b)(1); counts 1 & 2). Two additional counts alleged the commission of lewd or lascivious acts, without force or fear, upon a different child (victim 2) who was also under the age of 14 (§ 288, subd. (a); counts 3 & 4). Aggravating circumstances were alleged for purposes of sentencing. A multiple-victim allegation was pleaded pursuant to the "One Strike" law. (§ 667.61, subds. (b), (c)(4) & (8), (e)(4).)

Counts 1 and 2 were alleged to have occurred on the same date. Those charges were based on defendant's separate acts of touching victim 1's breasts and putting his hand down her pants. Victim 1 was 12 years old at the time of the incident. Counts 3 and 4 were based on allegations of lewd acts committed against victim 2 at multiple locations within a five-month period when victim 2 was between the ages of 11 and 12. Defendant was between the ages of 54 and 58 when he committed the offenses.

The People's trial evidence included testimony from the victims and their family members. In addition, a detective testified to details of a partial confession given by defendant under custodial interrogation. The defense rested without presenting any evidence.

Victim 1 testified defendant was a "family friend" who had visited her home on the day in question. After her mother left the house to buy food, defendant accosted victim 1 inside of her bedroom. Defendant forced himself upon her and pinned down one of her wrists as he groped her breasts with his free hand. The groping continued for "about three minutes straight," with defendant sometimes using both of his hands to feel above and underneath her shirt.

2.

Victim 1 further testified that "as soon as he was done touching my [breasts], he was reaching down into my pants." Defendant forced his hand inside of her pants and moved it downward, proceeding from "the waistband" to her thighs. Defendant was "grabbing onto [her] thighs" when a series of events prompted him to stop and flee the scene. The victim explained, "[H]e was still touching me, and then at a point, I was able to slide under him, and that's when he had heard my brother get out of the restroom because he was taking a bath, and that's when he just walked out all scared. [¶] … [¶] [A]nd because my mom had came back from bringing us food."

When defendant exited her bedroom, victim 1 immediately "grabbed [her] phone" and "called 911." Defendant briefly interacted with victim 1's mother before leaving the residence. Although initially unaware of what happened, the mother testified defendant had seemed "very nervous." When the mother later confronted defendant about victim 1's allegations, he threatened to kill her if she reported anything.

Police arrested defendant approximately two weeks after the incident involving victim 1. Under custodial interrogation, he admitted to touching the victim's breasts. According to police testimony, defendant explained he "had an interest or curiosity as to how a juvenile's breasts [felt]," specifically how a "nipple would feel when it was hard or soft." Defendant also confessed to having touched the breasts of victim 2 several years earlier.

Victim 2's mother was romantically involved with defendant for a period of several months. She ended the relationship after victim 2 revealed defendant had been molesting her. According to the mother's testimony, victim 2 is developmentally handicapped. Although she was 12 years old when the abuse occurred, her mental and behavioral maturity had been like that of a toddler or young child.

Victim 2 was 19 years old at the time of trial. Despite her disability, she was able to recall and describe the abuse. Relevant to count 3, she testified to defendant touching her breasts and thighs on multiple occasions inside of her mother's home. Relevant to

3.

count 4, she testified to defendant touching her thighs while they were in a parked car waiting for her mother to come out of a laundromat. She further testified, as to the car incident, "He told me not to tell my mom."

The jury deliberated for approximately 90 minutes before finding defendant guilty on all counts. The jury also made a true finding on the multiple-victim allegation. After receiving the verdicts, defendant stipulated to having the aggravating circumstances determined by the trial court. Relevant to all counts, defendant was found to have exploited a position of trust to commit crimes against two "particularly vulnerable" victims. Defendant's threat against victim 1's mother was found to be an aggravating circumstance in relation to counts 1 and 2. Defendant's "extreme callousness" toward victim 2 was an aggravating factor in relation to counts 3 and 4.

Based on the finding of multiple victims, defendant was sentenced under the One Strike law to 15 years to life in prison for each conviction. The sentences were ordered to be served consecutively, making the aggregate term "60 years to life." Defendant filed a timely notice of appeal.

## DISCUSSION

### I.      Sufficiency of the Evidence

Defendant seeks reversal of count 2 for insufficient evidence. As originally charged, in both the criminal complaint and information, count 2 was based on "putting his hand in [victim 1's] pants." In subsequent amendments to the information, the conduct was less descriptively alleged as "touched pants." At trial, the jury submitted a written request for clarification of counts 1 and 2: "What is count 1 for—touching of breast? [¶] Is count 2 for touching down the pants?" The trial court responded, "You are correct as to both." In this appeal, the parties agree count 2 was/is based on defendant's touching of victim 1's thigh(s).

"'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Jurado* (2006) 38 Cal.4th 72, 118.)  The standard of review is "highly deferential" to the verdict.  (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.)  "'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.'"  (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

Section 288, subdivision (a) proscribes the commission of lewd or lascivious acts upon a child under the age of 14 "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of the perpetrator or the child.  "*Any* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim."  (*People v. Lopez* (1998) 19 Cal.4th 282, 289.)  Subdivision (b) of the statute, under which defendant was convicted, applies when such acts are committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury."  Defendant's use of force is not in dispute.  His claim relates to the element of intent.

"Where a defendant fondles a portion of the victim's body with the requisite intent, a violation of section 288 has occurred.  The offense ends when the defendant ceases to fondle that area.  Where a defendant fondles one area of the victim's body and then moves on to fondle a different area, one offense has ceased and another has begun.  There is no requirement that the two be separated by a hiatus, or period of reflection."  (*People v. Jimenez* (2002) 99 Cal.App.4th 450, 456.)

Lewd touching can be done "through the victim's clothing and can involve 'any part' of the victim's body."  (*People v. Martinez* (1995) 11 Cal.4th 434, 444.)  "The

question of intent is one of fact, to be determined by the jury "'except in a case where the facts proven afford no reasonable ground for an inference as to intent.'"" (*People v. Pitts* (1990) 223 Cal.App.3d 606, 887–888.) "Intent is rarely susceptible of direct proof and must usually be inferred from a consideration of all the facts and circumstances shown by the evidence." (*Id*. at p. 888; accord, *In re Mariah T.* (2008) 159 Cal.App.4th 428, 440.)

Defendant concedes his groping of the victim's breasts permitted the inference of a sexual intent at that point in time. The victim testified defendant's touching of her breasts immediately preceded his touching of her thighs. The act of forcing his hand into victim 1's pants and moving it down to her thighs is independently probative of defendant's culpable intent. Defendant actually concedes a sexual intent can be inferred from the act of putting his hand down the victim's pants. Yet he argues his only intention was to touch her genitalia, and the contact with her thighs was incidental and/or done without the requisite mens rea.

As further explained in our discussion of his instructional error claim, *post*, defendant's theory of a thwarted attempt to only touch the victim's genitalia is unsupported by the trial evidence. Even if the evidence could support a theory of incidental or innocuous touching, the evidence also plainly supports contrary inferences of sexually motivated touching. "'"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]"'" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; accord, *People v. Ghobrial* (2018) 5 Cal.5th 250, 278.)

The jury's finding of the requisite intent is further supported by the evidence of defendant's lewd touching of victim 2, on her breasts and thighs, on multiple prior occasions. (See *People v. Martinez*, *supra*, 11 Cal.4th at p. 445 [the intent required by § 288 may be inferred from "other acts of lewd conduct admitted or charged in the case"]; *People v. Morales* (2018) 29 Cal.App.5th 471, 479 [concluding the appellant's touching of other victims, "which occurred under extremely similar circumstances to his touchings of Jane Doe 2, and were unmistakably sexually motivated, supported a reasonable inference that his touchings of Jane Doe 2 were similarly motivated"].) We therefore reject defendant's claim of insufficient evidence.

## II.    Section 654 Is Not Applicable

Defendant contends "he may only be punished for either [count 1] or [count 2], and punishment for the other must be stayed pursuant to … section 654." He reasons both counts "involved a single course of conduct," i.e., there was "no break between the acts … [and] no evidence from which to discern a differentiated, independent, or renewed intent." The argument is not persuasive.

Defendant was sentenced under section 667.61, also known as the One Strike law. There is a split of authority regarding whether the One Strike law categorically bars the application of section 654 to its sentencing scheme. (Compare *People v. Govan* (2023) 91 Cal.App.5th 1015, 1031–1033, with *People v. Bolanos* (2023) 87 Cal.App.5th 1069, 1086, review granted Apr. 12, 2023, S278803, and *People v. Caparaz* (2022) 80 Cal.App.5th 669, 689.) Section 654 has been held inapplicable to provisions of a similar sentencing scheme, section 667.6, which also provides for harsher punishment of certain sex crimes (including § 288, subd. (b)). (See *People v. Hicks* (1993) 6 Cal.4th 784, 787 [holding "the enactment of section 667.6, subdivision (c), created an exception to section 654 so as to permit the imposition of consecutive full-term sentences for enumerated

offenses constituting separate acts committed during an 'indivisible' or 'single' transaction"].)

Even assuming section 654 can apply to sentencing under the One Strike law, it still would not apply here given the facts of defendant's case. The relevant principles are summarized in *People v. Alvarez* (2009) 178 Cal.App.4th 999 at page 1006:

> "[Section 654] 'applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction.' [Citation.] Generally, whether a course of conduct is a divisible transaction depends on the intent and objective of the actor: 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.] [¶] *However, the rule is different in sex crime cases. Even where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished.* [Citations.] [¶] … That makes section 654 of limited utility to defendants who commit multiple sex crimes against a single victim on a single occasion. As our Supreme Court has stated, '[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally "divisible" from one another under section 654, and separate punishment is usually allowed.'" (Italics added.)

The divisibility of multiple crimes is determined by the trial court, "which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "If the court makes no express findings on the issue, as happened here, a finding that the crimes were divisible is implicit in the judgment and must be upheld if supported by substantial evidence." (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)

Defendant alleges counts 1 and 2 were committed "simultaneously," which is contrary to victim 1's testimony. She said, "[A]s soon as he was *done touching my [breasts]*, he was reaching down my pants." (Italics added.) The evidence easily permits the implied finding that touching victim 1's breasts was neither incidental to nor the means by which defendant accomplished the touching of her thighs, and vice versa. As such, defendant's claim must be rejected. (See *People v. Harrison* (1989) 48 Cal.3d 321,

325 [stating § 654 "does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification"]; *People v. Perez* (1979) 23 Cal.3d 545, 553–554 [§ 654 held inapplicable where "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other"].)

## III. Alleged Instructional Error

Defendant claims the trial court erred by not instructing, sua sponte, on attempted violations of section 288, subdivisions (a) and (b), as lesser included offenses of the crimes charged in counts 2 and 4. Both counts were based on defendant's touching of the victims' thighs. To support his argument, defendant offers the self-serving contention that he attempted to touch the victims' genitalia but was unable to complete the act because of their resistance (or for other unspecified reasons). As we explain, the theory is entirely speculative and lacks evidentiary support. For those reasons, the trial court had no duty to instruct on attempt.

### A. Applicable Law

As with other types of instructional error claims, the standard of review is de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; e.g., *People v. Brothers* (2015) 236 Cal.App.4th 24, 30.) "California law requires a trial court, sua sponte, to instruct fully on all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149.) "But a court must instruct on such theories only when the record contains ""'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense."" (*People v. Smith* (2018) 4 Cal.5th 1134, 1163.) Although "we view the evidence in the light most favorable to the defendant" (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137), the substantial evidence requirement "is not satisfied by

9.

"'*any* evidence … no matter how weak'"'" (*People v. Avila* (2009) 46 Cal.4th 680, 705). Nor is it satisfied by mere speculation. (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.)

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Generally speaking, an attempt to commit a specific intent crime is a lesser included offense of the target crime. (See *People v. Ngo* (2014) 225 Cal.App.4th 126, 156.) "To sustain a conviction of attempted violation of section 288 …, the prosecution has the burden of demonstrating (1) the defendant intended to commit a lewd and lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd and lascivious act with a child under 14 years of age." (*People v. Singh* (2011) 198 Cal.App.4th 364, 368.)

**B.    Analysis**

Although defendant confessed to touching the victims' breasts, he did not admit to touching any lower parts of their bodies. With regard to victim 1, he specifically denied trying to touch her below the waist. The detective who interrogated defendant testified as follows: "When asked if he tried to run his hands down her pants, he denied that completely, hundred percent. He said that's not true." Defendant's current theory of a direct but ineffectual attempt to touch victim 1's genitalia conflicts with his own previous denials.

The only evidence of what occurred in relation to count 2 was the testimony of victim 1. Defendant erroneously contends victim 1 testified to pushing his hands away while he was attempting to touch her below the waist. The victim did testify to "trying to move his hands away from me," but only in relation to the groping of her breasts. Victim 1 twice testified that while defendant's hand was inside of her pants, she was "in shock mode" and "wasn't doing nothing."

We assume defendant's claim is based on the following exchange during the prosecutor's direct examination of victim 1:

"Q  Okay.  So then he went under your shirt, and you said he was trying to touch your private part?

"A  Yes.

"Q  And can you just tell us how he was trying to do that?

"A  Well, he tried to get into my pants, tried to put his hands down my pants but he couldn't because I was wearing sweats, so it was hard for him, but he was, like, trying to, like, really hard but then I pushed him off."

Despite what is suggested by the prosecutor's question, the victim had not previously testified to an attempt by defendant to touch her "private part."  She had testified to defendant's touching of her breasts.  The prosecutor was likely alluding to the witness's prior statement that defendant "tried to go down [her] pants."  Regardless, the above excerpt must be read together with the remainder of the victim's testimony vis-à-vis count 2.  The insufficiency of the testimony to support an attempt instruction becomes apparent when read as a whole.  The relevant additional testimony was as follows:

"Q  And during the time when he was touching your [breasts], what were you doing?

"A  I was trying to move his hands away from me.

"Q  And can you tell us how you were trying to do that?

"A  I was grabbing—I was grabbing his hands with my hands, putting them far away from me, but I couldn't because he was, like, with his pushing—he was putting his hands on me.

"Q  Okay.  And when you were—when he was trying to get inside your pants, um, was his hands on your pants at that time?

"A  Um, at a point, they did go into my pants.

"Q  Oh, so at a point, they went inside?

"A  Yes.

11.

"Q  And do you know—about how far, would you say, inside, they went into?

"A  Down my thigh.

"Q  Down your thigh.  Okay.  *So they went past your private area?*

"A  *Yes.*

"Q  Okay.  And I guess, did he go upward or, um, down?  Like, how was he trying to get into your pants?

"A  Um, well, I was wearing sweats at the time, so it was tight for him, and he was, like, with his pressure of his hand, he pressured himself—his hand into my pants, and he did—and he was just grabbing onto my thighs.

"Q  Okay.  Was it—was he going up the leg of the pants or down the or down the band—the waistband of your pants?

"A  Down.

"Q  So from the—down the waistband into your pants?

"A  Yeah.

"Q  Okay.  And he touched your thigh?

"A  Yes.

"Q  *So he was then able to get into—inside of your pants?*

"A  *Yeah*.

"Q  *But then was touching your thigh at that point?*

"A  *Yes.*

"Q  *And, um, what were you doing during that time?  What was your body doing?*

"A  *I was just in shock mode.  I wasn't doing nothing*.

"Q  Did you say anything to him during that time?

"A  I didn't.

"Q And did you do anything to indicate that you didn't want, um, to be touched *at any point in time*?

"A Yes, I kept pushing him off me.

"Q And what happened when you would push him off?

"A Um, I couldn't because his body was literally on me.

"Q Okay. And you said you were smaller at that time?

"A Yeah.

"Q And, um, so what happened next?

"A Um, he was still touching me, and then at a point, I was able to slide under him, and that's when he had heard my brother get out of the restroom because he was taking a bath, and that's when he just walked out all scared." (Italics added.)

Defendant argues "a reasonable jury could have concluded that [his touching of victim 1's] thigh was incidental to a failed attempt to touch [victim 1's genitalia] with the intent to arouse, and thus concluded that [he] had attempted but failed to engage in a completed lewd act necessary for conviction in Count Two." As shown by the evidence, there was a failed initial attempt to put his hand into victim 1's pants. However, a subsequent attempt to put his hand down her pants was successful. Count 2 was based on the touching of her thigh while his hand was inside of the pants.

There is no evidence that, once his hand was inside of victim 1's pants, defendant made an unsuccessful attempt to touch victim 1's genitalia. The evidence only shows his hand moved downward from the waistband, "went past [her] private area," and stopped at her thighs. Defendant's claim of entitlement to an attempt instruction rests on nothing more than speculation. "Speculation is insufficient to require the giving of an instruction on a lesser included offense. [Citations.] In addition, a lesser included instruction need not be given when there is no evidence that the offense is less than that charged." (*People v. Mendoza*, *supra*, 24 Cal.4th at p. 174.)

Defendant's claim regarding count 4 is borderline frivolous.  Count 4 was based on the touching of victim 2's thigh while she and defendant were alone in a parked car.  The victim was asked on direct examination, "[W]here on your body did he touch you?"  She responded, "On my thighs."  On redirect examination the prosecutor asked, "And touching you again where?"  Victim 2 answered, "On my thighs."  In response to subsequent leading questions, she indicated it was the "inside" portion of her "upper" thigh but still a "couple inches" away from her "private area."  There is no evidence of defendant attempting to touch victim 2 anywhere other than her thighs during the incident upon which count 4 was based.

## DISPOSITION

The judgment is affirmed.


                                                                PEÑA, J.

WE CONCUR:


LEVY, Acting P. J.


SNAUFFER, J.